## Case No. 7,514.

### In re JORDAN.

[8 N. B. R. 180;[1] 5 Leg. Op. 169; 30 Leg. Int. 296.]

District Court, W. D. North Carolina. June, 1873.

Graves & Hyman, for bankrupt.
Mr. Pickins, for creditors.

DICK, District Judge. I concur in the able and well prepared opinion of the register upon the several questions which have been certified to this court for adjudication. In Re Beckerford [Case No. 1,209], the United States circuit court of Missouri decided that, "the provisions of section fourteen of the bankrupt act adopting the exemptions in favor of execution debtors established by the laws of the several states does not destroy the uniformity of the bankrupt act, nor violate any of the provisions of the federal constitution." The question decided was directly presented for adjudication, and the opinion of Miller and Krekel, JJ., is positive and forcible, and seems to have been well considered. I feel safe in relying upon any legal decision of Mr. Justice Miller, as there is no judge in any country whose judicial opinions are entitled to more consideration or greater weight of authority. The amendment of June 8, 1872

[1] [Reprinted from 8 N. B. R. 180, by permission.]

[17 Stat. 334], does not materially vary the question of uniformity decided in Re Beckerford [supra], as it only changes the date when the state exemptions are adopted; and the act of March 3, 1873, declares the true intent and meaning of the act of June 8, 1872, and re-enacts it with some alterations renuered necessary by the circumstances of the times. The general policy and purpose of bankrupt laws is to make an equal distribution of the effects of an insolvent debtor among all of his creditors, and then discharge an honest debtor from all prior debts. Before the adoption of the federal constitution, each state possessed the general powers of sovereignty and could pass bankrupt laws to operate upon its own citizens, but could not affect the rights of the citizens of other states. As it was easy to foresee that there would be many business transactions and much commercial intercourse between the citizens of the several states which would necessarily produce considerable individual indebtedness, which might result in extensive financial embarrassments, it was obvious to the framers of the federal constitution that the benefits of a wise, humane and general system of bankruptcy, which might, under certain exigencies, become necessary to promote the happiness and commercial prosperity of the nation, could only be effectually established by the federal government adopted by the people of the several states for general and national purposes.

To provide for any emergency that might arise for a general bankrupt law, the constitution vested the necessary sovereign power in congress with no other limitation than that the laws upon such subject should be uniform in their operation among the several states. The uniformity required is as to the general policy and operation of such laws; as, for instance, that the common law right which a debtor has to prefer one creditor over another shall be taken away and his property be equally distributed among all of his creditors; that bankrupts who make an honest surrender of their effects shall be discharged from all prior debts; that all questions relating to bankrupts, their estates and creditors, shall be adjusted and administered in the same courts, and by the same forms and modes of proceeding. These general purposes of bankruptcy are certainly provided for in the present bankrupt act, and are everywhere administered with uniformity in the federal courts; and this is the extent of the uniformity required by the constitution to make such laws operate equally, justly, effectually and beneficially in every part of the nation. The bankrupt act, in some minor particulars, must necessarily operate differently in the different states. Thus, the bankrupt law regards as valid the legal and equitable liens existing by law in the several states; and as the nature, force and effect of such liens are dependent upon local laws, they will, in some respects, be different in the different states. The English doctrine of the equitable lien of a vendor or purchaser of real estate is recognized in some of our states, and not in others; and where it exists it is enforced in the courts of bankruptcy. A bankrupt court adjusts the rights of creditors, and administers the effects of a bankrupt, subject to the charges, whether by way of lien or exemption, which are created by the laws of the states in which such court is held or the property to be disposed of is situated. This rule was adopted to make the bankrupt law as uniform as possible among the states, by recognizing local laws and thus preserving the harmony and spirit of comity which should always exist between the federal and state governments. This rule does not violate, but carries into effect, that provision of the constitution which requires all national bankrupt laws to be uniform in their operation among the several states.

The principles involved in the second question certified by the register are too obvious and too well settled by numerous adjudications to need any further discussion. Congress certainly has the plenary and paramount power, save the restriction above considered, to pass bankrupt laws which will not only impair the obligation of contracts, but entirely discharge the debtor from such obligation, no matter when or where contracted. Congress, also, has the power in establishing a uniform system of bankruptcy to do away with the effects of liens created by the judgments of any court. If a judgment can be discharged by a bankrupt law there is no reason why a lien which is an incident to a judgment, cannot also be discharged. A lien by judgment does not create any vested right in the property subject to such lien which the constitution protects from legislative encroachment. It is neither a right in, nor to, such property, but simply a charge imposed thereon by statute. It is a part of the remedy which the local law gives a creditor in the collection of his debts, and a particular remedy is not a vested right. As a general rule every state has complete control over the remedies which it shall afford to parties in its courts. Horton v. McCall, 66 N. C. 159; Ladd v. Adams, Id. 164; Cooley, Const. Lim. 358, 361. The extent, force and effect of a lien created by a state statute must depend upon the interpretation given such statute by the highest court of the state. We have seen, in the cases above cited, that in this state a judgment lien is not a vested right. As a remedy it may be modified by the legislature, and any change that does not virtually destroy the remedy does not impair the obligation of existing contracts. The homestead laws of this state do not abolish judgment liens, but merely postpone the time of their enforcement. This modification of a legal remedy may well be regarded as reasonable by a court of justice which takes into consideration the anoma-

lous condition of things existing when the modification was made, and that it was prompted by a wise and humane policy which must necessarily result in the general public good. While the states are prohibited by the constitution from impairing the obligation of contracts—either directly, or by virtually abolishing existing remedies—no such inhibition is imposed upon congress. The power expressly conferred upon congress to enact uniform bankrupt laws, is necessarily an express power to do away entirely with contracts, as such a result is the very object and essence of bankrupt laws. But it is insisted that while congress may have this paramount power over contracts, it exceeds its authority in enacting that state exemptions shall be "valid against liens by judgment or decree of any state courts." This is equivalent to saying that the contract may be impaired, but the remedy must not be interfered with—the principal may be destroyed, but the incident is protected against legislative action. There is nothing in the nature of liens why they should be thus specially protected, as they are not vested rights; but there are strong reasons why they should not be recognized and enforced by bankrupt laws. The enforcement of liens is certainly contrary to the policy of a general system of bankruptcy, the object of which is to distribute the estate of an insolvent debtor among all of his creditors, upon the principle that equality is equity. Liens, upon general principles, certainly deserve no special favor and protection in bankrupt laws. The bankrupt act, before the amendment of March 3, 1873, in express terms avoids liens valid under state laws and created by the levy of an attachment within four months before the commencement of proceedings in bankruptcy, and this action of congress is generally conceded to be constitutional. Congress has even interfered with vested rights, for by the thirty-fifth section of the bankrupt act, assignments and conveyances made under certain circumstances are avoided, although such assignments and conveyances are valid at common law and under the laws of the state, and the parties have acquired a complete title and possession of the property conveyed. I have a very decided opinion that congress did not exceed the limits of its constitutional powers in enacting the act of March 3, 1873. I also think that congress, under its general powers over the subject of bankruptcy, could avoid all liens, whether existing by statute, by usage, by express contract, or at common law.

The case of Gunn v. Barry [15 Wall. (82 U. S.) 610], recently decided in the supreme court of the United States, has been called to my attention in the argument, and is worthy of my most careful consideration, as it is an exposition of the law by the supreme judicial tribunal of the nation. The opinion is read with great interest, both by lawyers and laymen, in every section of the country,

and the decision may result in serious consequences to many of our people. The questions of law involved have been frequently discussed by able counsel, and have been decided differently in many of the supreme courts of the states. The opinion of Mr. Justice Swayne is not elaborate, and the questions presented are not as fully considered as I had supposed they would have been, on account of their importance and general public interest, when the homes of tens of thousands of our unfortunate citizens may depend upon the decision, and when the action of so many state conventions, legislatures and supreme courts may be overruled. The abstract principles decided in Gunn v. Barry, supra, are announced in almost the same language to be good law in Hill v. Kesler [63 N. C. 437], in the supreme court of this state, and the apparently different decisions in the two cases may be easily reconciled. The decision in Gunn v. Barry would have been made in Hill v. Kesler under a similar state of facts. The exemption law of Georgia gave a homestead absolutely to the debtor, and deprived the creditor of all remedy. In Hill v. Kesler, it is conceded that if a state abolish or injuriously change the legal remedy existing at the time a contract is made, such action would be void, as in violation of the constitution of the United States. In both the cases which we are considering it is agreed that a state may change legal remedies provided such change does not impair a substantial right. Such changes are usually made to meet some new condition of things, and are influenced by reasons of public policy. The legislature is the proper body to consider and act upon questions of public policy, and the legislative will, upon such subjects, ought to be regarded as the law of the land by the judiciary, unless it is manifestly in violation of the constitution. Imprisonment for debt was a remedy in this state for the enforcement of contracts. The legislature thought this remedy a relic of barbarism and ought not to exist in a free, enlightened and Christian state, and such remedy was abolished. The constitutionality of this legislative action would be sustained in any court, although it impaired existing and substantial rights. The enlightened legal principles that control this question will certainly sustain the homestead laws of this state, upon the grounds of humanity and a wise public policy. These laws do not destroy vested rights, disturb specific liens, or abolish any legal remedy, but only postpone the time of their enforcement. I do not regard the case of Hill v. Kesler as overruled by Gunn v. Barry, but I will not consider the question further, as it belongs more appropriately to another tribunal.

The question presented for my determination is—how far does the case of Gunn v. Barry affect the homestead rights of insolvent debtors in a court of bankruptcy. In that case it is decided thus: "Congress can-

not, by authorization or ratification, give the slightest effect to a state law or constitution in conflict with the constitution of the United States. This instrument is above and beyond the power of congress and the states, and is alike obligatory upon both." I admit the soundness of the legal principle so clearly and forcibly expressed. A state statute that is in violation of the constitution of the United States is absolutely void, and no power in the government can give it vitality or authorize its operation as a state law. But there are some subjects upon which a state cannot rightfully legislate, and yet congress may do so under the constitution. A state cannot coin money, emit bills of credit, make anything but gold and silver coin a tender in payment of debts, &c., but congress can pass laws upon such subjects, and in legislating may adopt and enact the very principles and terms of an unconstitutional state law. If this state had adopted the present bankrupt law it would have been unconstitutional, as it impairs the obligation of contracts and affects the rights of the citizens of other states. Congress, however, could adopt the very language and principles of such state law and enact it as a national law, and such action would be constitutional; as it would constitute a system of bankruptcy uniform among the states. The act of March 3, 1873, does not profess, by "authorization or ratification," to make valid, state exemption laws which are unconstitutional, but adopts the principles of such laws and to a certain extent makes them a part of the general bankrupt law. The act says in express terms "that the exemptions allowed the bankrupt shall be the amount allowed by the constitution and laws of each state respectively as existing in the year eighteen hundred and seventy-one." It will be observed that the act of March 3, 1873, makes a material change in re-enacting the act of June 8, 1872, by substituting the words "as existing" in place of the words "in force." It is manifest from the terms of the act of March 3, 1873, that the object of congress was to do away with a difficulty that arose under the act of June 8, 1872, by some state court declaring that exemptions to debtors in state constitutions and laws were not in force as to antecedent debts; as such part of such laws were in conflict with the constitution of the United States. Congress therefore expressly declared that such state exemptions should be valid against antecedent debts; and ex industria substituted the words "as existing" in place of the words "in force," and intended that the exemptions allowed under the bankrupt law should be the amount designated in the constitution and laws of the states respectively in existence in the year 1871, even if such laws, as state laws, should be declared to be unconstitutional by the courts. As the power of congress over the subject of bankruptcy is plenary and paramount, and as its intent is so clearly manifested by its action,

we are of the opinion that the act of March 3, 1873, is constitutional and must be administered in the bankrupt courts according to its true intent and meaning unmistakably expressed in its language. The exceptions to the report of the assignee are disallowed, and said report is in all things confirmed.