### In re SMITH.

[2 Woods, 458;[1] 2 N. Y. Wkly. Dig. 532; 14 N. B. R. 295; 8 Chi. Leg. News, 315; 3 Cent. Law J. 386; 3 Am. Law T. Rep. (N. S.) 335.]

Circuit Court, N. D. Georgia.    March, 1876.

BANKRUPTCY — EXEMPTION — CONSTITUTIONALITY OF AMENDED ACT.

The act of congress, approved March 3, 1873 [17 Stat. 577], prescribing what property shall be allowed the bankrupt, as exempt from the operation of the bankrupt law, is uniform and constitutional.

[Cited in Darling v. Berry, 13 Fed. 670.]

[Cited in brief in Wooster v. Bullock, 52 Vt. 51.]

[See review of the action of the district court of the United States for the Northern district of Georgia.]

This was a petition filed to reverse a decree of the district court in bankruptcy. The facts of the case appeared from the pleadings and evidence to be as follows: John W. A. Smith, was adjudicated a bankrupt by the district court on June 3, 1873. At the date of the adjudication, the petitioner, Mathew Whitfield's administrator, was the judgment creditor of the bankrupt in the sum of $8,397. The judgment was rendered prior to July 21, 1868, when the present constitution of Georgia went into effect, and was a lien upon the real estate of the bankrupt. By an act passed prior to and in force in 1864, when the debt due to the petitioner was contracted and which remained in force until the adoption of the constitution of 1868, there was allowed to the head of a family, as a homestead exempt from execution, fifty acres of land, and in addition thereto, five acres for each of his children under sixteen years of age. By the constitution of 1868, and by an act of the legislature, passed October 3, 1868, to carry the constitutional provision into effect, there was allowed to the head of a family a homestead of realty, exempt from execution, of the value of two thousand dollars. The judgment of the petitioner against the bankrupt was duly proven and allowed as a debt against the bankrupt estate, prior to June 30, 1874. On that day the assignee in bankruptcy set off to the bankrupt his homestead, according to the provisions of the act of 1864, namely, ninety acres of land, that being fifty acres and five acres in addition thereto for each child of the bankrupt under sixteen years of age. The bankrupt claimed that he was entitled to have assigned to him the homestead allowed by the constitution of 1868, and the act of October 3, 1868, to wit: realty of the value of $2,000. He therefore filed with the register his objections to the assignment made by the assignee. The register referred the question thus raised, with his opinion thereon, sustaining the objections of the bankrupt against the assignment, to the district judge who also sustained the objections of the bankrupt, and held that he

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

was entitled to have his homestead set off under the provisions of the act of October 3, 1868, notwithstanding the fact that the debt of the objecting creditor was contracted, and the judgment therefor a lien upon the realty of the bankrupt before the change in the homestead law. To review and reverse this decision of the district judge is the purpose of this petition, filed by the administrator of the judgment creditor.

C. Peeples and E. P. Howell, for petitioner.
J. S. Boynton and F. S. Dismuke, contra.

WOODS, Circuit Judge. The case turns upon the constitutionality of the act of congress approved March 3, 1873, entitled "An act to declare the true intent and meaning of the act approved June 8, 1872 [17 Stat. 334], amendatory of the general bankrupt law." 17 Stat, 577; Rev. St. § 5045. This statute enacts that "the exemptions allowed the bankrupt * * * shall be the amount allowed by the constitution and laws of each state respectively as existing in the year 1871, and that such exemptions be valid against debts contracted before the adoption and passage of such constitution and laws, as well as those contracted after the same, and against liens by judgment or decree of any state court, any decision of any such court rendered since the adoption and passage of such constitution and laws to the contrary notwithstanding."

To put the question clearly in view, it must be stated that after the adoption of the constitution of 1868, and the act of October 3, 1868, to carry into effect the exemptions prescribed by the constitution, the supreme court of Georgia, at its January term, 1873, in the case of Jones v. Brandon, 48 Ga. 593, decided that the provisions of the constitution and of the law so far as they increased the exemptions of property from execution as against debts contracted before their adoption were in conflict with that clause of the constitution of the United States, which declares: "No state shall * * * pass any * * * law impairing the obligation of contracts" (Const. U. S. art. I, § 10), and were therefore null and void. The same decision had in effect been previously made by the supreme court of the United States in the case of Gunn v. Barry, 15 Wall. [82 U. S.] 610. It follows from this state of the law as declared by the courts, that when the assignee undertook to set off the homestead of the bankrupt on June 30, 1873, he was not authorized to set apart as against Whitfield's administrator, any greater quantity of realty than was authorized by the act of 1874 [18 Stat. 178], except as he derived his authority from the act of congress of March 3, 1873, above quoted. In other words, there was no valid and operative state law by which the bankrupt could claim that he was entitled to a homestead of the value of $2,000, as prescribed by the constitution and law of 1868.

The question, therefore, whether the act of

congress of March 3, 1873, is constitutional, is vital to the decision of this case. The objection to this act is not that it impairs the obligation of contracts, for congress is not prohibited by the constitution from passing such a law. Evans v. Eaton [Case No. 4,559]; Satterlee v. Matthewson, 2 Pet. [27 U. S.] 380; Bloomer v. Stolley [Case No. 1,559]. Besides, the power expressly given to congress "to establish uniform laws on the subject of bankruptcies throughout the United States" implies the power to impair the obligations of contracts. Hepburn v. Griswold, 8 Wall. [75 U. S.] 603; The Legal-Tender Cases, 12 Wall. [79 U. S.] 457. .The ground of objection is, that the law is not uniform as required by the constitution of the United States. In my judgment, a bankrupt law which adopts the exemption from execution prescribed by the laws of the several states is uniform so far as such exemptions are concerned. The exemptions may differ widely in different states, but such an act would apply a uniform rule, namely, to subject to the payment of the bankrupt's debts all his property not exempted by the laws of the state wherein he resided. Upon this ground, the original provision of the bankrupt act, which adopted the state exemption laws in force in 1864, was declared to be uniform. In re Beckerford [Case No. 1,209]. But it is said that the act of 1873 does not adopt the exemption laws as they exist in the states, but gives effect to all those which were upon the statute books of the states in 1871, even though some of them may have been declared unconstitutional, invalid and inoperative by the state courts; that the operation of the act of congress is therefore not uniform, because in some states the exemption allowed by the state law is followed, while in others, exemptions are permitted, which the state laws, as interpreted by the courts, do not allow. The same objection would apply to the original bankrupt act of 1867 [14 Stat. 517]. That declared that the exemptions allowed by the state laws in force in 1864 should be allowed under the bankrupt act. The unconstitutionality of this provision has never been declared, and yet, before the 3d of March. 1867, the date of the bankrupt act, many of the states might have altered, amended or repealed the exemption laws which were in force in 1864. Doubtless, many of them did so before the passage of the act of 1873. Yet the bankrupt act of 1867 undertook to give effect, not to the exemption laws as they existed at its passage, and as they might be thereafter altered or amended, but as they existed in 1864. So, if the original act was uniform, the amendment of 1873 must be uniform. Had the bankrupt act made no exemption at all, or a horizontal one, as of such a number of dollars, or of certain specified articles, it would have been less uniform than the rule adopted in 1867 or 1873, because the contracts made in each state were subject to the im-

plied condition that they could never be enforced against the property of the debtor exempted by the laws of such state, and a horizontal exemption would have cut down contracts in one state and aided them in another, which would not have been uniform; that is, it would not have been paying uniform respect to the obligation of contracts made in different states. Perhaps the most exactly uniform rule would have been to subject every contract to such an exemption as it was liable to when made. But that would not have been practicable, for the property of the same debtor would, in many instances, have been liable to different exemptions, and his property would always be taken by the claims which were subject to the least exemption, but only for the benefit of the owners of such claims, so that some creditors would get a larger percentage of their claims than others.

It appears, therefore, that the best thing congress could do was to adopt the state exemptions existing at a recent day and likely to affect most contracts made by the bankrupt. Congress has undertaken to say that all exemptions in force at a certain date by laws of the state shall have effect under the bankrupt act. I think this sufficiently meets the requirement of uniformity, and that, to make the law uniform, it was not necessary to enact that the bankrupt act should follow the shifting legislation of the states on the subject of exemptions, or the decisions of the state courts. Thus, the bankrupt act of 1867 continued the exemptions that were in force in Georgia in 1864, although those exemptions had been repealed and new ones established by the act of October 3, 1868. Suppose the bankrupt act of 1867 had declared that all exemptions by the state law in force at the date of its passage should have effect under the bankrupt act. That would clearly be a uniform enactment. Would it cease to be such and become unconstitutional merely because the legislature of a state had, at a subsequent time, amended its exemption laws, or the courts of another state had declared its exemption laws unconstitutional?: I think it would not. In other words, I think congress may adopt the state laws on the statute books of the state, at a particular date, in reference to exemptions, and that the legislation is uniform, although the laws in some of the states may afterwards be repealed by the legislature or declared null by the courts. I am advised that a different view of the subject has been taken by the United States circuit court for the Eastern district of Virginia in Re Deckert [Case No. 3,728]. But, in passing upon the constitutionality of an act of congress, all the presumptions are in favor of the law. While, therefore, disposed to yield great weight to this high authority, I cannot forget that, in the opinion of the congress of the United States, this law is constitutional, and that the highest judicial authority has said that

the courts ought not to pronounce a law unconstitutional unless its incompatibility be clear, decided and inevitable. Fletcher v. Peck, 6 Cranch [10 U. S.] 87; Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 625; Livingston v. Moore, 7 Pet. [32 U. S.] 469.

While I admit that the argument against the constitutionality of this act is plausible and persuasive, yet I cannot say that it is entirely convincing; it does not make the unconstitutionality of the act clear, decided and inevitable. Resolving doubts, therefore, in favor of the law, I must decline to declare it unconstitutional, and I must affirm the decree of the district court.