# Constitutionality of Legislation to Confer Citizenship Upon Albert Einstein

Congress has the authority to enact a law granting citizenship to Albert Einstein.

April 9, 1934

MEMORANDUM FOR THE ASSISTANT SOLICITOR GENERAL

The Constitution, Article I, Section 8, Clause 4 provides that:

> The Congress shall have Power . . . to establish an uniform Rule of Naturalization . . . .

In the early days of the government the courts seemed inclined to the view that the power to admit to citizenship remained in the states, except as Congress might provide uniform rules on the subject, which would supersede any state rules or laws. However, the courts soon adopted the view, which has since prevailed unquestioned, that the exclusive power to admit to citizenship vests in the Congress. *See* Frederick Van Dyne, *Treatise on the Law of Naturalization of the United States* 6–9 (1907) ("*Treatise on Naturalization*") (discussion of cases); U.S.C.A. Const., pt. I, at 378–79 (1928) (digest of cases); *United States v. MacIntosh*, 283 U.S. 605, 615 (1931) ("Naturalization is a privilege, to be given, qualified or withheld as Congress may determine").

The requirement of uniformity does not appear to have been judicially considered except as indicated in the following excerpt from *Darling v. Berry*:

> In my opinion, when a bankrupt, revenue, or *naturalization law is made by its terms applicable alike to all the states* of the Union, without distinction or discrimination, it cannot be successfully questioned on the ground that it is not uniform, in the sense of the constitution, merely because its operation or working may be wholly different in one state from another.

13 F. 659, 667 (C.C.D. Iowa 1882) (emphasis added).

*Ruling Case Law* states that:

> The requirement of uniformity is construed to mean that the mode or manner of naturalization prescribed by Congress should have uniform operation in all the states.

1 R.C.L. § 62, at 848 (William M. McKinney & Burdett A. Rich eds., 1914).

Congress has long exercised the power of conferring citizenship by the following methods:

(l) General statutes empowering the courts upon the finding of pre-scribed facts to grant certificates to persons within classes specified.

(2) General statutory provisions conferring citizenship upon aliens who marry American citizens, upon children of aliens whose parents acquire American citizenship, etc.

(3) Statutes admitting to citizenship aliens residing in the United States during prescribed periods; thus, the Act of April 14, 1802, admitting all persons residing in the United States before January 29, 1795, upon proof of two years residence.

(4) The statutes admitting to citizenship all persons, or specified classes of persons, residing in purchased or conquered territory.

(5) Statutes admitting to citizenship Indians of specified tribes.

(6) Statutes and resolutions conferring citizenship upon individual al-iens, designated by name.

(7) Practically every treaty of cession has contained provisions con-cerning the collective naturalization of persons within the ceded ter-ritory, sometimes with express exceptions.

The foregoing methods are treated with illustrations in Van Dyne, *supra*, and Alexander Porter Morse, *Treatise on Citizenship* (1881). *Boyd v. Thayer* states that "[t]he instances of collective naturalization, by treaty or by statute, are numerous," pointing out a number of such instances, and specifically upholding all such collective naturalization as applied to persons within the territory of Nebraska. *Boyd v. Nebraska ex rel. Thayer*, 143 U.S. 135, 162 (1892).

Concerning naturalization of named individuals by special act or resolution, Van Dyne states that "[t]here are numerous instances of naturalization by special statutes." *Treatise on Naturalization* at 317.

Morse states generally: "Sometimes the sovereign power or legislative will speaks directly, and grants naturalization to a particular individual by name." *Treatise on Citizenship* § 93, at 128.

The following are instances of naturalization of named aliens by a special act or resolution of Congress:

Nellie Grant Sartoris, married an alien and readmitted to American citizenship by Resolution of March 18, 1898, 30 Stat. 1496.

Eugene Prince, son of an American citizen residing abroad, admitted to citizenship by Resolution of July 19, 1912, 37 Stat. 1346.

George E. Lerrigo, son of an American citizen residing abroad, ad-mitted to citizenship by Act of February 23, 1915, 38 Stat. 1476.

> Mrs. Slidel, of Louisiana, admitted to American citizenship by special act or resolution about 1915. Information supplied by the Bureau of Naturalization but no act or resolution can be found—possibly accounted for in that Mrs. Slidel may have been admitted under her maiden name and afterwards married.

> Joseph Beech, an alien of many years residence in the United States, admitted to citizenship by Resolution of February 26, 1917, 39 Stat. 1495.

> Frances Scoville-Mumm, American citizen married to an alien, readmitted to citizenship by Resolution of October 25, 1919, 41 Stat. 1449.

> Augusta Louise deHaven-Alten, American citizen married to an alien, readmitted to citizenship by Resolution of April 8, 1920, 41 Stat. 1463.

The Bureau of Naturalization (Mr. Volker) states that there have been other such special acts and resolutions but that no records have been kept and that it would be impossible to compile such cases except through the expedient of a page-by-page examination of the statutes since the beginning of the government.

Of course, all efforts in Congress to confer citizenship by a special act or resolution are not successful. For example, a resolution was introduced in the House of Representatives on December 3, 1930, to confer citizenship upon Mr. Brent Balchen, the renowned explorer. 74 Cong. Rec. 166. While the Resolution remained undisposed of, Mr. Balchen applied for and obtained naturalization under the general statutes. This information is supplied by the Bureau of Naturalization.

All such acts and resolutions have conferred citizenship "unconditionally," usually in language substantially similar to that of the resolution now pending, except, of course, as to the part which recites the considerations upon which the proposed action would be taken.

Mr. Volker stated that the files of the Bureau of Naturalization disclose that no question concerning the power of Congress to confer citizenship in such manner was raised until recent years. Formerly, they considered such questions when presented only upon consideration of the merits of the particular case, but lately they have inclined to the view that such naturalization may be construed as a violation of the constitutional provision concerning "an uniform Rule." He says they have no authorities, but rely solely upon the language of the Constitution.

I think the view presently entertained by the Bureau of Naturalization is erroneous. As indicated above, the uniformity mentioned is geographical uniformity. Prior to the Constitution when the states exercised the power of naturalization, it was possible for a person to be a citizen in one state and an alien in another. It was this condition which the constitutional provision was intended to remedy. Furthermore, the practice, since the earliest days, is opposed to the view that Congress

may not discriminate against or in favor of aliens upon considerations of race, nationality, geographical residence (either abroad or in this country), relationships by blood or consanguinity, periods of residence, education, etc. In other words, Congress has the sole power to determine the requisites of citizenship by naturalization, and to determine even more specifically who may or who may not be admitted to such citizenship.

Mr. Volker says that they concede the power of Congress to admit to citizenship directly rather than leaving it to others to ascertain the prescribed facts and they admit the power of Congress to specify a class so limited that perhaps only Professor Einstein might come within it. These things, I think, are necessarily true and when you accept them, it appears to me to be somewhat inconsistent to question the power of Congress to admit Professor Einstein to citizenship by name and without more. Even assuming that the uniformity requirement means avoidance of discrimination as applied to individual aliens, it would still be necessary to prove that Congress would not take the same action with respect to other aliens of similar status and circumstances in order to prove discrimination.

The files have been examined carefully and do not reveal any previous consideration of such a question in this department.

Of course, it may be unwise to admit Professor Einstein to citizenship, and I have found no case of the admission of an alien under precisely similar circumstances.

J.T. FOWLER, JR.
*Attorney-Adviser*
*Office of the Assistant Solicitor General*
