BECKER, (DINGEE v.) See Case No. 3,-919.

BECKER, (KURTZ v.) See Case No. 7,951.

---

## Case No. 1,209.

### In re BECKERFORD.

[1 Dill. 45;[1] 4 N. B. R. 203, (Quarto, 59;) 10 Am. Law Reg. (N. S.) 57; 4 Am. Law T. 14; 1 Am. Law T. Rep. Bankr. 241.]

Circuit Court, D. Missouri. 1870.

BANKRUPT ACT—CONSTITUTIONAL LAW—MISSOURI EXEMPTION LAWS.

1. That part of the 14th section of the bankrupt act [of 1867, (14 Stat. 522)] which adopts the state exemption laws in force in 1864 as the measure of property to be exempted under proceedings in bankruptcy, is uniform in its operation among the states, and is therefore constitutional.

[Cited in Re Jordan, Case No. 7,514; Re Kean, Id. 7,630; Re Smith, Id. 12,986; Re Jordan, Id. 7,515; Re Smith, Id. 12,996; Darling v. Berry, 13 Fed. 668; Re Van Vliet, 43 Fed. 767.]

2. By the exemption laws of Missouri, in force in 1864, a homestead may be set apart to a debtor out of a leasehold in real estate, or where such leasehold is not susceptible of division he may retain $1,000 out of the proceeds of it.

[Appeal from the district court of the United States for the eastern district of Missouri.]

In bankruptcy. This was an appeal from a judgment of the district court. At the time Beckerford was declared a bankrupt he was the owner of an unexpired term of a leasehold estate. The value thereof, as appeared from a sale made by the assignees, was $1,490. After the sale, the bankrupt, by his counsel, appeared before the register and claimed $1,000 of the proceeds of the sale in lieu of a homestead, which claim was resisted by assignees. The register thereupon certified the case to the district court of the eastern district, and Treat, District Judge, allowed the claim, and ordered the amount

to be paid by the assignee, [unreported.] From this order the assignee appealed to this court.

A. Binswanger, for assignee.

In some twelve states no homestead exemptions existed in 1864, while in other states there is a great diversity as to the amount and value of the homestead exempt. In many eastern states a homestead of the value of only $500 is allowed exempt from execution, while in other states a much greater amount is exempt. In California $5,000 in value is exempt. In Wisconsin, Minnesota, and Arkansas there is no limitation as to value or extent of the homestead. These exemptions not being uniform, fall within the inhibition of section 8 of article 1 of the constitution of the United States, which gives congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. Congress cannot do that indirectly which it cannot do directly. Having no power to embody the various homestead exemptions of the several states in the law itself, it cannot do it indirectly by inserting such a clause as this, and there is no uniformity in the law as required by the constitution.

Charles E. Pearce, for bankrupt.

Before MILLER, Circuit Justice, and KREKEL, District Judge.

KREKEL, District Judge. It is admitted that the bankrupt is the head of a family. The 14th section of the bankrupt law, after excepting certain specified articles, goes on to exempt "such other property as now is or hereafter shall be exempted from attachment or seizure, or levy on execution, by the laws of the United States, and such other property not included in the foregoing exceptions, as is exempted from levy and sale upon execution, or other process or order of any court, by the laws of the state in which the bankrupt has his domicile at the time of the commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year 1864." The laws of Missouri in 1864 exempted, among other property, from sale under execution or other process, "when owned by the head of a family or wife who shall be a bona fide resident of the state, any of his or her real estate not exceeding 160 acres of farming land. or one lot in town or city in value $1,000, at the date of such exemption, to be held and enjoyed by such party, as a homestead." After providing for setting apart the homestead and ascertaining the value thereof, the law proceeds to enact that "when the real estate owned by the head of a family is of greater value than the amount allowed as the value of a homestead, and is not susceptible of division, such real estate may be sold, and the officer shall pay over to the defendant in such execution,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

the amount or value of a homestead exempted under the provision of the act." The act has the usual provision, making it inapplicable to liabilities contracted before the taking effect thereof.

Two questions are presented for our consideration. First, can a homestead be carved out of a leasehold estate? and if so, secondly, is that part of the 14th section of the bankrupt law, making the exemption, constitutional?

The language of the Missouri statute in reference to title is, that he or she must be owner of the real estate in order to have a homestead exempted. It is argued that there can be no such ownership as the law here contemplates, in a leasehold estate, and hence no homestead can be carved out of it. By the 17th section of the Missouri statutes, relating to executions, [Rev. St. Mo. p. 753, § 73,] it is enacted that leases upon land for any unexpired term of three years and more, shall be subject to execution, and sold as real property. The term real property is defined by the 18th section of the general provisions of the same statute, [Rev. St. Mo. § 73,] as including every estate, interest, and right in land. These provisions seem to us to solve the question suggested, in favor of the bankrupt, entitling him to have a homestead set apart in the leasehold owned by him at the time he was declared a bankrupt.

The second question presented and urged with earnestness is the unconstitutionality of that part of section 14 of the bankrupt law, making the homestead exemption.

"Congress shall have power to establish uniform laws on the subject of bankruptcy, throughout the United States," is the language of the constitution by which the grant is made. It is insisted that the 14th section, already cited, having adopted the exemption laws of the state in which the bankrupt is domiciled, and these exemptions having no regard to uniformity, violates the constitutional provision authorizing uniform laws throughout the United States to be passed. It is obvious, from the language employed, that the uniformity here referred to was a uniformity among the states. If congress saw cause to pass bankrupt laws under the grant of power referred to, the injunction is that they shall be uniform throughout the United States. So far as the distribution of the bankrupt's assets—the point under consideration—is concerned, the law is uniform. When viewed with reference to the state exemption laws, there is a uniformity which, on reflection, readily suggests itself. Though the states vary in the extent of their exemptions, yet what remains the bankrupt law distributes equally among the creditors. Nor does the bankrupt law in any way vary or change the rights of the parties. All contracts are made with reference to existing laws, and no creditor could recover more

from his debtor under the state laws than the unexempted part of his assets, the very thing that is attained by the bankrupt law, which, therefore, is strictly uniform.

To establish the uniformity contended for would have made it necessary for congress to have virtually abrogated all state exemption laws. In doing so it would necessarily have legislated against the debtor class, by making whatever property was exempt, at the time of contracting, subject to distribution. This certainly would not have tended either to uniformity, justice, or equality. But the power to abrogate state exemption laws has never been claimed for congress; on the contrary, such laws have been upheld and declared constitutional, when not applied to obligations incurred prior to the passage of the law. The idea of property in men has grown gradually weaker, and since the abolishment of imprisonment for debt, has nearly vanished.

In lieu thereof, the state, for its own purposes, and the well-being of the individual and family, has secured what are deemed necessaries, against the claims of creditors, and directed the latter to look to the other property and integrity of his debtor for security.

Exemption laws now exist in all the states, and are deservedly becoming more and more popular. There is something so humane underlying them, that courts will not interfere unless they violate a plain mandate of the organic law.

We find nothing in the provisions of the bankrupt law which we are now considering, that is in violation of the constitution of the United States. The order of the district court is affirmed.