**In the Matter of Lewis L. REYNOLDS, Debtor.**

**Bankruptcy No. 3–81–00219.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 26, 1982.

E. James Wampler, Dayton, Ohio, trustee.

Clifton E. Plattenburg, Dayton, Ohio, for debtor.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

Lewis L. Reynolds filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on 27 January 1981, in which he did not claim an exemption in a life insurance policy then in effect on his life. On 4 March 1981 Debtor amended his B–4 schedules to list "Life Insurance Exemption 2329.66(A)(b)(c)." The name of the insurance company and the name of the beneficiary were not shown so that the Trustee in Bankruptcy could take action.

On 3 April 1981 the Trustee filed his first Ad Interim Report reciting that, "Your Trustee is checking to see whether the above debtor's insurance policy might be an asset in this case." In his Ad Interim Report filed 10 July 1981, the Trustee reported, "Your Trustee is following-up on the life insurance policies." By Order entered 4 August 1981, the Trustee was authorized to seek the value of "life insurance policy No. 3875121 written by Western-Southern Life."

On 14 August 1981 the Debtor again amended his schedules to claim as exemption Policy No. 3875121, but again failed to demonstrate sufficient information to satisfy the Ohio Statutory requirements for such an exemption.

The Trustee's Ad Interim Report filed 30 November 1980 recited that, "Your Trustee is in process of following up in order to receive the value of the insurance policy per order dated 8/4/81." The Trustee's Final Report filed 5 March 1982 showed receipt of the "loan value" of the insurance policy "per order filed 8/4/81." The final meeting was scheduled and held on 12 April 1982.

Apparently the attorney for the Debtor and the Trustee never communicated with each other as no notices were exchanged. The Clerk's Office likewise served no notices or copies of the amendments to the schedules.

On 21 April 1982 Debtor filed a motion to require ". . . the Trustee to return the cash surrender value of the Debtor's insurance policy . . . claimed as an exemption. . ." which was set for hearing on 17 May 1982.

### DECISION

The Trustee cannot be faulted for his pursuit of the cash surrender value of the life insurance policy because of the haphazard manner the exemption was claimed, and the fact he was served with no notice of the amended exemption claims by the clerk. Unfortunately, a putative exemption claim was made prior to the fruition of the Trustee's efforts to liquidate the policy. Hence, now to hold that the claim for exemption was made too late, and therefore is now barred, would penalize the Debtor in asserting what, on hindsight, appears to be a valid exemption and, in fact, would not be of real benefit to the unsecured creditors after the payment of administrative expenses incurred to date.

The Trustee, at the final meeting, and at the subsequent hearing on the Debtor's mo-

tion, politely indicated that he had performed his fiduciary duties properly and could not in all conscience invest further valuable time to litigate the matter in view of the picayunish statutory commission and allowances provided by the Bankruptcy Code for the services of a Trustee. The only question presented, therefore, is the constitutionality of the "catch all" exemptions under Ohio Revised Code Sections 2329.66(A)(4)(a) and (A)(17) which would provide total of $800.00 to Debtor, if applied, "in any property," inasmuch as the insurance policy unfortunately has been forfeited.

The decision by this Court *In Re Eastwood, Case No. 70–1818–D (at Dayton,* 1971) is the case precedent to be examined. That case involved an amendment to the Ohio exemption statutes effective July 1, 1970, obviously adopted to delimit the wage exemptions adopted by Title III of the Consumer Credit Protection Act, 15 U.S.C. §§ 1671–1677, enacted in 1968 and effective on July 1, 1980. The effect of the Ohio Statute was to place limitations on the wage exemption "if claimed in a bankruptcy proceedings." Ohio Revised Code § 2329.66(G)(2). This special classification applicable to bankrupts was by this Court held in conflict with the bankruptcy preemption clause of the United States Constitution (Article I, § 8); and, also unable to muster constitutional validity because it classified bankrupts as a special class of debtors and denied bankrupts (as a class) and non-bankrupts (as a class) the equal protection of the laws pursuant to the 14th Amendment to the United States Constitution. It was this Court's opinion that the Ohio Statute did then discriminate against bankrupts as a class. Thereafter until the effective date of the Bankruptcy Code of 1978, enacted November 6, 1978, this Court allowed wage exemptions conformably to the federal statute.

This case presents a reconsideration of a classification of bankruptcy debtors into a special class provided in the current Ohio Exemption Statutes, in light of the decision by this Court in 1971, which concluded that the prior Ohio Exemption Statute contained similar provisions which would not bear Constitutional muster.

Section 522(b) of the Bankruptcy Code established federal exemptions listed in Section 522(d) as an alternative to those created by state law, which debtors could elect to take, designed as a minimal federal standard. Because of arguments in favor of retaining state exemptions, a compromise was enacted by Section 522(b)(1) permitting a state to veto the right of debtors to elect the federal exemptions. Accordingly, Ohio enacted Section 2329.662 which provides that, "Pursuant to the 'Bankruptcy Reform Act of 1978,' 92 Stat. 2549, 11 U.S.C. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978,' 92 Stat. 2549, 11 U.S.C. 522(d)." The previous Ohio Exemption Statutes were superceded by enactment of a new list of exemptions which followed the format of 11 U.S.C. § 522(d), but materially reduced the allowances in effect although accomplishing a revision of the former statutes which had become seriously in need of revision in terms of a realistic approach to twentieth century economic factors.

The present Section 2329.66 not only reduced federal exemptions; but, also, in many respects different allowances were provided to debtors depending on whether claimed by bankruptcy debtors, or other debtors. The sections of the present Ohio statute now pertinent (§ 2329.66(A)(4)(a) and (A)(17)) contain the qualification and reservation, as follows: "This division applies only in bankruptcy proceedings."

■ Traditional case precedent have established the principle that reliance upon state law for exemptions to be applicable to debtors under federal bankruptcy law does not violate the constitutional requirement of uniformity if there is uniformity of application to all debtors within the state (or perhaps even if a state elects to abolish all exemptions). See *Stellwagen v. Clum,* 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1981); and *Hanover National Bank v.*

*Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). The Constitution provides that Congress may "establish uniform Laws on the subject of Bankruptcies." In *Moyses,* the Supreme Court held that "uniformity is geographical, and not personal, and we do not think that the provisions of the Act of 1898 as to exemptions [applying state laws] is incompatible with that rule." The classic definition of geographic uniformity is given in the *Head Money Cases,* 112 U.S. 580, 594, 5 S.Ct. 247, 251, 28 L.Ed. 798 (1884). More recently, see *Railway Labor Executives' Association v. Gibbons,* 455 U.S. 457, 102 S.Ct. 1169, 71 L.Ed.2d 335, *reh. den.* —— U.S. ——, 102 S.Ct. 1997, 72 L.Ed.2d 459 (1982); and *In The Matter of Sullivan,* 680 F.2d 1131 (7th Cir.1982).

The present Ohio statute, nevertheless, discriminates against debtors who are not in bankruptcy. That is, the exemptions now claimed are not granted to such debtors indiscriminately within the same geographical area. The result is a special exemption enacted for application in bankruptcy, constitutionally the exclusive province of The Congress. U.S. Constitution Art. 1, § 8, cl. 4.

█ When a state endeavors to adopt exemptions applicable only in the bankruptcy court, it then invades an area of law reserved to the federal government, as preempted by the United States Constitution and statutes enacted pursuant thereto. Perhaps the Congress may relinquish matters deemed within the province of state laws not deemed a federal right, as demonstrated by 11 U.S.C. § 522. In any event, the states must then apply such a state enactment uniformly. They cannot, furthermore, adopt provisions peculiar to and applicable only under federal bankruptcy law. To hold otherwise would permit an evasion or annulment of the federal bankruptcy laws indirectly that would not be countenanced directly since the Congress did not delegate its bankruptcy powers, assuming such could be done.

█ This issue extends beyond the question of constitutionally permitted class discrimination. In this sense, this court is constrained to disagree with the scholarly analysis *In Re Bloom,* 5 B.R. 451 (Bkrtcy. Ohio 1980), followed by *In Re Vasco,* 6 B.R. 317 (Bkrtcy. Ohio 1980), because the Ohio statute either enacts special bankruptcy legislation or enacts legislation violative of Article IV, Section 2 (Privileges and Immunities Clause) and the Equal Protection Clause, Amendment XIV of the United States Constitution. Such exceeds the thrust of 11 U.S.C. § 522, which merely implements case precedents permitting the exercise of state sovereignty either to deny all exemptions on a geographical basis or to enact unique exemptions applicable constitutionally throughout the state because compliance with the Ohio Constitutional provisions is not enough. Both the congressional power under the bankruptcy clause and any delegation to state enactment are limited by the external restraints in the Bill of Rights. See *Ex Parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1878).

Assuming that the Ohio exemption statutes in this regard cannot bear constitutional muster is not, however, dispositive of the present quandary.

The Trustee is empowered to muster all non-exempt property for the bankruptcy estate for distribution to creditors. To apply the Ohio exemption as to bear constitutional muster would not defeat the bankruptcy debtor's exemption; but, would extend the same exemption to non-bankruptcy debtors equally. A non-bankruptcy debtor would have standing to assert such a right. Hence, whether constitutionally applied on not, the Trustee in Bankruptcy does not enhance the bankruptcy estate.

█ We are constrained to hold, therefore, that the question of constitutionality cannot be raised by a trustee in bankruptcy (or creditor or a debtor in bankruptcy). The question is only justiciable in a non-bankruptcy context by the class discriminated against (non-bankruptcy debtors). The *ratio decidendi* and unconstitutional effect found in *Eastwood* does not apply *instanter.*

ORDERED, ADJUDGED AND DE-CREED that Lewis L. Reynolds should be, and is hereby, granted an exemption in the funds collected by the Trustee from the life insurance to the maximum amount of $800.00 since the exemption claim was amended to assert the life insurance exemption before the cash proceeds were collected from the insurance company.