In the Matter of Andrea I. REESE, also known as Andrea I. Reece, Debtor–Appellant.

No. 95–3778.

United States Court of Appeals, Seventh Circuit.

Argued July 10, 1996.

Decided July 30, 1996.

38

Steven K. Huffer (argued and briefed), Mitchell, Hurst, Jacobs & Dick, Indianapolis, IN, for Appellees Jeri A. and Alan A. Neal.

Steven L. Kennedy (argued and briefed), Indianapolis, IN, for Appellant Andrea I. Reese.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

POSNER, Chief Judge.

Section 523(a)(9) of the Bankruptcy Code provides that a discharge in bankruptcy of the debtor's debts does not discharge a debt "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." Andrea Reese was intoxicated on the day in 1988 that she collided

with the Neals. They sued her in an Indiana state court and won a judgment for compensatory and punitive damages. After paying the award of compensatory damages, Reese filed for bankruptcy under Chapter 7 of the Code, seeking to discharge her debt to the Neals for the $15,000 in punitive damages that the Indiana court had awarded them. The discharge being barred by the section of the Bankruptcy Code that we quoted, Reese challenges the section as a violation of the Constitution, which in Article I, § 8, cl. 4 authorizes Congress to establish *"uniform Laws on the subject of Bankruptcies throughout the United States"* (our emphasis). Earlier the bankruptcy court had granted summary judgment for Reese without reaching her constitutional ground. The Neals had appealed and the bankruptcy court's judgment had been reversed and the case remanded to that court. But Reese did not renew her constitutional ground until after the bankruptcy court granted summary judgment on remand, this time for the Neals. She filed a motion under Fed.R.Civ.P. 59(e) to vacate the judgment for the Neals on the ground that it was based on an unconstitutional statute. The court denied the motion, and the district court, on Reese's appeal, affirmed. Now she appeals to us.

A motion under Rule 59(e) is not authorized "to enable a party to complete presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir.1995). So it is as if Reese had first raised her constitutional challenge on appeal to the district court, and the Neals argue that this is too late, that she has waived it. Since she raises a pure issue of law, on which factual development in the bankruptcy court would cast no light, the waiver could be forgiven. *Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746, 749–50 (7th Cir.1993). Yet we might hesitate to exercise lenity if the result would be to declare an act of Congress unconstitutional; it is right to make litigants turn square corners when they ask courts to confront another branch of government in so fell and portentous a fashion. But there is no danger of that here, as the uniformity argument has no possible merit.

The limited legislative history of the uniformity clause, plus the decisions by the Supreme Court interpreting it (both sources of meaning well surveyed in Dan J. Schulman, "The Constitution, Interest Groups, and the Requirements of Uniformity: The United States Trustee and the Bankruptcy Administrator Programs," 74 *Neb. L.Rev.* 91, 98–116 (1995)), establish that the clause forbids only two things. The first is arbitrary regional differences in the provisions of the Bankruptcy Code. The second is private bankruptcy bills—that is, bankruptcy laws limited to a single debtor—or the equivalent. *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 472, 102 S.Ct. 1169, 1178, 71 L.Ed.2d 335 (1982). Requiring uniformity so defined protects creditors, which was a major objective of the framers of the Constitution. It does this by reducing the incentive of debtors to relocate in or shift property to an area that might, as a result of their lobbying Congress, have a more lenient bankruptcy regime, and by preventing the most influential debtors from obtaining their own personal bankruptcy regime. Perfect uniformity would prevent Congress from allowing the states to fix exemptions from the debtor's estate, since the absence of uniformity of exceptions creates an incentive for debtors who are on the verge of bankruptcy to move to states that have generous exemptions. The Supreme Court has made clear that perfect uniformity is not required. *Id.* at 469, 102 S.Ct. at 1176; *see also Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 172, 67 S.Ct. 237, 244, 91 L.Ed. 162 (1946) (Frankfurter, J., concurring).

So Reese acknowledges, by not challenging Congress's decision to permit states to fix the exemptions from the debtor's estate even though the consequence of that permission is that debtors fare much better in bankruptcy in some states than in others. What we do not understand is why she thinks that exemptions from discharge should be held to a degree of uniformity not required of exemptions. She gives no reasons or authorities for such a difference in treatment. The lack of uniformity that troubles her is remote from any objective that can reasonably be ascribed to the framers. She is concerned

solely with the fact that in roughly half the states, including Indiana, punitive damages are not available in wrongful death suits. This makes the drunk-driver section of the Bankruptcy Code affect bankrupt accident-causing drunk drivers differently depending on whether the accident inflicts a fatal injury or not. But unlike the states' provisions on exemptions, which Reese accepts, the difference in treatment with which she is concerned has nothing to do with varying state policies on creditors' rights. It has to do only with different state policies concerning remedies in tort cases, differences rooted in historical differences between suits for wrongful death (traditionally conceptualized as suits by the survivors for *their* loss, a pecuniary rather than a physical injury) and suits by injured persons. These differences, unlike differences in the generosity of exemptions from creditors' claims, have nothing to do with varying state policies concerning credit or insolvency, or with any of the purposes behind the federal constitutional and statutory provisions on bankruptcy. Reese's argument implies that if some states are more generous in awarding damages for personal injuries than others, as of course is true, section 523(a)(9), in failing to specify a fixed amount of personal-injury debt that is not discharged if it results from drunk driving, is unconstitutional even if punitive damages can be awarded regardless of whether the victim lives or not. At argument her lawyer even suggested that the provision is unconstitutional because it applies only to motor-vehicle accidents, and not to boating and airplane, perhaps nontransport, accidents as well. This begins to sound crazy.

Although Reese's lawyer appears to be perfectly sincere in advancing this challenge to the constitutionality of section 523(a)(9), the argument is so devoid of any possible foundation in reason or history or precedent that we deem it frivolous and therefore sanctionable. Fed. R.App. P. 38. It is eight years since the accident took place and the victims of Reese's drunkenness have been put to inordinate expense in seeking to collect the relatively small sum that they are due. In these circumstances we direct Reese's counsel to show cause, within ten days of the date of this decision, why he should not be sanctioned for prosecuting a frivolous appeal.

AFFIRMED, AND RULE TO SHOW CAUSE ISSUED.