**In the Matter of Roger Allen CROSS, Debtor.**

**No. 98–10471.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Oct. 2, 2000.

Dean A. Brown, Fort Wayne, IN, for Debtor.

James Young, Fort Wayne, IN, for trustee.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This case is pending under Chapter 7 of the United States Bankruptcy Code. The debtor and his non-debtor spouse own real estate as tenants by the entireties. The debtor has claimed an exemption for this property, pursuant to Indiana law, which permits an exemption for:

Any interest the judgment debtor has in real estate held as a tenant by the entireties on the date of the filing of the petition for relief under the bankruptcy code, unless a joint petition for relief is filed by the judgment debtor and spouse, or individual petitions of the judgment debtor and spouse are subsequently consolidated. I.C. 34–2–28–1(a)(5).[1]

The trustee has filed an objection to this exemption, arguing that the statute upon which it is based violates both the Indiana Constitution and the Constitution of the United States. The matter has been submitted to the court for a decision based upon the parties' stipulation of facts and the briefs of counsel.

*Indiana Constitutional Challenge*

Article I, Section 22 of the Indiana Constitution provides:

[t]he privilege of the debtor to enjoy the necessary comforts of life, shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale for the payment of any debt or liability ... Ind. Const. Art. I, § 22.

In *In re Zumbrun*, 626 N.E.2d 452 (Ind. 1993), the Indiana Supreme Court concluded that "statutes which create unlimited exemptions are inconsistent with the directive of Section 22 and the balanced policy underlying it." *Id.* at 455. Based on this conclusion, the court invalidated the state's exemption for assets held in retirement plans because "[the statute] exempted an unlimited amount of intangible assets from execution to pay legitimate debts, making it possible to closet virtually every liquid asset possessed by a debtor simply through placing the assets in some form of retirement instrument." *Id.* The trustee argues that I.C. 34–2–28–1(a)(5) suffers from the same deficiency because it too exempts an unlimited amount of assets from execution; the only difference is the type of property which can be exempted.

*Zumbrun* established a bright line standard which required the Indiana legislature to place a limit on the amount of property that may be exempted, so that a statute which allows unlimited exemptions is facially invalid. *Zumbrun* was not, however, the court's last word on the subject. In *Citizens Nat'l Bank v. Foster*, 668 N.E.2d 1236 (Ind.1996), it revisited the issue and, in doing so, reformulated the analytical approach that is to be used. *Foster* abandoned the per se rule that *Zumbrun* announced. While the court continued to adhere to the principle that the Indiana Constitution requires some type of limit on exemptions—so that limitless exemptions are "constitutionally suspect"—it concluded that "the identification

---

1. This is the statute in effect on the date of debtor's petition. It has since been repealed and reenacted as I.C. 34–55–10–2(b)(5). Although the current version is the same, the court will refer to the statute by its previous designation.

**30**

of an upper limit or lack thereof standing alone should not be dispositive." *Foster,* 668 N.E.2d at 1242. "Rather, courts must delve into to [sic] admittedly murkier waters of reasonable necessity." *Id.* This approach requires the claimant to demonstrate that the exemption is needed in order to provide it with "the 'necessities of life.'" *Id.*

■ The significance of *Foster* is that, where an exemption is challenged under the Indiana Constitution, the focus of the court's inquiry has been shifted away from the validity of the statute authorizing the exemption to the propriety of the debtor's having claimed the exemption the statute creates. In other words, the court should not consider a facial challenge to the statute, but should, instead, base its decision upon the statute as applied. The issue has effectively become a question of fact, rather than a question of law.

■ While this court can apply the analytical framework established by *Foster,* it cannot follow the procedural path established by that decision. That path places the burden of proving the validity of the claimed exemption upon the debtor. The Federal Rules of Bankruptcy Procedure specifically allocate the burden of proof where a claimed exemption has been objected to and they place the burden upon the objector. "[T]he objecting party has the burden of proving that the exemptions are not properly claimed." Fed. R. Bankr.P. Rule 4003(c). Consequently, given the analytical framework of *Foster* and the procedural requirements of Bankruptcy Rule 4003(c), the trustee must prove that debtor's claimed exemption for entireties real estate is not needed in order to afford the debtor with the necessities of life. The stipulated facts do not do so.[2] Accordingly, the court cannot conclude that debtor's claimed exemption for entireties real estate violates the Indiana Constitution.

**2.** By the same token, since the parties have approached this issue as a question of law,

*United States Constitutional Challenge*

The trustee advances two arguments why I.C. 34–2–28–I(a)(5) violates the United States Constitution. He first contends that it violates the Uniformity Clause of Article I, Section 8. He also argues that it is invalid under the Supremacy Clause of Article VI. The court will consider each of these arguments in turn.

The Uniformity Clause

■ The Constitution grants Congress the power to "establish ... uniform Laws on the subject of Bankruptcies." U.S. Const. Art. I, § 8, cl. 4. The requirement of uniformity was designed to prevent arbitrary regional differences in the nation's bankruptcy laws and private bankruptcy legislation. *In re Reese,* 91 F.3d 37, 39 (7th Cir.1996). It does not, however, demand "perfect uniformity," *Reese,* 91 F.3d at 39, or "eliminati[ng] ... any differences among the States." *Railway Labor Executives' Ass'n v. Gibbons,* 455 U.S. 457, 469, 102 S.Ct. 1169, 1176, 71 L.Ed.2d 335 (1982). Instead, it requires only "geographical" uniformity. *Hanover Nat'l Bank v. Moyses,* 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902). Its requirements will be satisfied when the law applies "to a defined class of debtors," *Gibbons,* 455 U.S. at 473, 102 S.Ct. at 1178, and "when [the] existing obligations of a debtor are treated alike ... regardless of [where] the bankruptcy court sits." *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 172, 67 S.Ct. 237, 244, 91 L.Ed. 162 (1946)( Frankfurter, J. concurring). Consequently, the Uniformity Clause does not require that all bankruptcy debtors have the same exemptions. Congress may permissibly recognize state exemptions without running afoul of its restrictions. *Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113. Nor does it require that bankruptcy debtors have the same exemptions as those outside of bankruptcy. *See In re Beckerford,* 3 F.Cas. 26

neither do they establish that the property is necessary for that purpose.

(C.C.D.Mo.1870)(upholding the provisions of the Bankruptcy Act of 1867 which granted a debtor specified federal exemptions in addition to those allowed by state law). *See also In re Deckert,* 7 F.Cas. 334 (C.C.E.D.Va.1874).

The trustee's challenge to I.C. 34–2–28–1(a)(5) fails to recognize that the Uniformity Clause is not a restriction upon the states. It is included among the powers which are granted to Congress—in this instance the authority to enact bankruptcy legislation—and it operates as a limitation on the type of bankruptcy laws Congress may enact. *Gibbons,* 455 U.S. at 468, 102 S.Ct. at 1176. It is difficult, if not impossible, to see how a *state* law can violate a restriction on the powers of the *national* legislature.[3]

Once we recognize that the Uniformity Clause does not apply to the states, that part of the trustee's objection is easily disposed of. It is either a direct challenge to a state law, based upon a constitutional provision which does not apply,[4] or an indirect challenge to Congress's decision to recognize state exemptions and to permit states to opt out of the federal bankruptcy exemptions. In either event, the objection must fail. *See, e.g., In re Sullivan,* 680 F.2d 1131 (7th Cir.1982); *In re Storer,* 58 F.3d 1125 (6th Cir.1995); *Rhodes v. Stewart,* 705 F.2d 159 (6th Cir.1983)(upholding the provisions of § 522 which allow states to opt out of the federal bankruptcy exemptions).

### The Supremacy Clause

The Supremacy Clause declares that the Constitution and the laws which Congress has enacted pursuant to the powers given it constitute "the supreme Law of the Land." U.S. Const., Art. VI, cl. 2. One effect of this provision is to invalidate state laws which interfere with or are contrary to federal law. *Gibbons v. Ogden,* 9 Wheat. 1, 22 U.S. 1, 211, 6 L.Ed. 23 (1824). The trustee contends that I.C. 34–2–28–1(a)(5) interferes with the operation of the nation's bankruptcy laws because it prevents the trustee from administering assets that the debtor's creditors could reach outside of bankruptcy. The essence of the trustee's position is that Indiana may not legitimately create an exemption that applies only to bankruptcy proceedings.

"[A]ny state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." *Perez v. Campbell,* 402 U.S. 637, 652, 91 S.Ct. 1704, 1712 (1971). In *Perez,* the Court laid out the analytical path that should be followed in determining whether state law is invalidated. "Deciding whether a state statute is in conflict with a federal statute and hence invalid under the Supremacy Clause is essentially a two-step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez,* 402 U.S. at 644, 91 S.Ct. at 1708. Applying this analysis to Indiana's bankruptcy exemption for entireties property leads to the conclusion that it frustrates the full effectiveness of federal bankruptcy law in two ways. It changes the way Congress allocated the

---

**3.** Saying that the Uniformity Clause does not apply to the states is not the same as saying that they are free to enact bankruptcy legislation. There are limitations on the states' ability to do so. Yet those limitations do not come from the Uniformity Clause. Instead, they arise out of other provisions of the Constitution, such as Article I, section 10, clause 1, which prohibits states from impairing contracts, and the Supremacy Clause of Article VI, clause 2. *See Gibbons,* 455 U.S. at 472 n. 14, 102 S.Ct. at 1178 n. 14.

**4.** In reaching this conclusion, the court recognizes that there are decisions, based upon the Uniformity Clause, invalidating state exemption laws that apply only in the event of bankruptcy. *See, e.g., In re Mata,* 115 B.R. 288 (Bankr.D.Colo.1990); *In re Lennen,* 71 B.R. 80 (Bankr.N.D.Cal.1987). *But see In re Shumaker,* 124 B.R. 820 (Bankr.D.Mont. 1991); *In re Vasko,* 6 B.R. 317 (Bankr. N.D.Ohio 1980). The court believes that the issue is more appropriately analyzed under the Supremacy Clause.

consequences of bankruptcy between debtors and creditors and it specifically conflicts with the statutory framework Congress created for dealing with entireties property in bankruptcy proceedings involving only one spouse.

Both this court and the Seventh Circuit thoroughly examined the issues associated with entireties property in bankruptcy proceedings and the effect of the exemption created by I.C. 34–2–28–1(a)(5) in *In re Hunter,* 122 B.R. 349 (Bankr.N.D.Ind.1990), *aff'd, In re Hunter,* 970 F.2d 299 (7th Cir.1992). Under Indiana law, property held as tenants by the entireties may not be seized or sold to satisfy claims against either individual spouse. Joint creditors, however, who obtain a judgment against both spouses may enforce that judgment against entireties property and have it sold to satisfy the obligation of both spouses. *Hunter,* 122 B.R. at 352–53. Consequently, outside of bankruptcy, Indiana law allows entireties property to be used to satisfy the claims of creditors, but only for the joint debts of both spouses; it may not be used to satisfy the debts of only one spouse. Indiana Code 34–2–28–1(a)(5) changes this in bankruptcy. It completely exempts entireties property from administration by a bankruptcy trustee where only one of the two spouses files bankruptcy, without regard to the existence of joint creditors. *Hunter,* 122 B.R. at 358. "By allowing the debtor to completely exempt his interest in entirety property from the bankruptcy estate, Indiana has not preserved the amenability of that property to creditors but shielded it from all creditors, including joint creditors." *Hunter,* 970 F.2d at 308.

"Bankruptcy is both a creditor's remedy and a debtor's right." *In re Marchiando,* 13 F.3d 1111, 1115 (7th Cir. 1994). One consequence of this duality is that bankruptcy law is simultaneously pursuing two contradictory goals. On the one hand, it seeks to provide a distribution to creditors by liquidating the debtor's property. At the same time, however, it also

seeks to give the debtor a "fresh start" through the bankruptcy discharge and by allowing the debtor to keep property from creditors through exemptions. *See Burlingham v. Crouse,* 228 U.S. 459, 473, 33 S.Ct. 564, 568, 57 L.Ed. 920 (1913). These goals compete with one another so that as we try to increase the interests of one group we cannot avoid circumscribing the interests of the other. For example, by excepting debts from the scope of any discharge, we enhance the rights of some creditors and improve the likelihood that their debts will be paid; yet, by refusing to relieve the debtor of a portion of its debt, the value of its fresh start is diminished. Conversely, if we enhance the debtor's fresh start by allowing it to exempt more property, we undermine the interests of creditors by reducing the assets that can be liquidated to satisfy their claims. Because of this inherent tension between debtors and creditors, in crafting the current Bankruptcy Code, Congress necessarily confronted their competing interests and sought to balance them when it allocated the consequences of bankruptcy between debtors and creditors. Just how it did this is reflected throughout the Bankruptcy Code. It can be found in the sections identifying what becomes property of the bankruptcy estate and what is excluded from it, how the assets of the estate are distributed among creditors, the exemptions available to a debtor and the ways in which a debtor can deal with the property it has exempted, the circumstances under which a debtor may receive a discharge and the nature of the debts that will survive discharge, as well as many more.

One may wish to argue about how Congress has resolved the tension between the competing interests of debtors and creditors, the balance it has struck, and how the consequences of bankruptcy have been allocated between them. Nonetheless, it was Congress's right to make those decisions and the states cannot change the balance that Congress has struck. *International Shoe Co. v. Pinkus,*

278 U.S. 261, 265, 49 S.Ct. 108, 110, 73 L.Ed. 318 (1929)("States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations."). Consequently, state law cannot make a debt nondischargeable. *Marchiando,* 13 F.3d at 1116; *National Collection Agency v. Trahan,* 624 F.2d 906, 907 (9th Cir.1980); *State Farm Ins. Co. v. McConnehea (In re McConnehea* ), 96 B.R. 121, 123 (S.D.Ohio 1988). Neither can those laws undermine the value of a discharge. *Perez,* 402 U.S. 637, 91 S.Ct. 1704. *See also Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). States may not attempt to alter the way in which the assets of the estate are distributed, *Elliott v. Bumb,* 356 F.2d 749, 754–55 (9th Cir.1966); *Commercial Credit Corp. v. Allen (In re Crosstown Motors, Inc.*), 272 F.2d 224, 227 (7th Cir.1959); *Strom v. Peikes (In re Corson Furniture Co.*), 123 F.2d 1003 (2nd Cir.1941), allow debtors an exemption which federal law denies, *Gardner v. Johnson,* 195 F.2d 717 (9th Cir.1952), or prevent the trustee from administering property that creditors could reach outside of bankruptcy. *In re Kanter,* 505 F.2d 228 (9th Cir.1974). Nor can states define exemptions in a way that will prevent the debtor from avoiding certain liens upon exempt property. *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). *See also In re McManus,* 681 F.2d 353, 358 (5th Cir.1982)(Dyer, dissenting). In each of these instances, the courts have been confronted with a state law that somehow altered the balance that Congress struck, allocating the consequences of bankruptcy between debtors and creditors, and refused to allow state law to change that balance.

How to allocate assets between a debtor and its creditors is an issue that lies at the heart of every bankruptcy law. It also presents one of the central tensions of those laws because whatever you give to the one you must necessarily take from the other. Consequently, one of the most controversial debates during the development of the current Bankruptcy Code was in the area of exemptions. Congress debated such diverse issues as whether there should there be uniform federal exemptions; if so, at what levels and should they be mandatory? Alternatively, should it continue to recognize state exemptions, and, if so, under what circumstances? *See In re Neiheisel,* 32 B.R. 146, 148–65 (Bankr.D.Utah 1983)(discussing the legislative history). The solution to the exemption debate can be found at 11 U.S.C. § 522. It is there that Congress declared how the assets of an individual debtor are to be allocated between it and the bankruptcy estate in order to both satisfy the claims of creditors and promote the debtor's post-bankruptcy fresh start. Initially, Congress gave debtors the opportunity to choose (11 U.S.C. § 522(b)) between federal bankruptcy exemptions (11 U.S.C. § 522(d)) and the applicable state (and federal non-bankruptcy) exemptions (11 U.S.C. § 522(b)(2)) that would otherwise be available. Nonetheless, Congress also gave states the ability to opt out of the federal bankruptcy exemptions and, by prohibiting their use, to restrict debtors to the exemptions available under state law. 11 U.S.C. § 522(b)(1).

At one time it may have been thought that there were no restrictions on the states' ability to opt out. *See e.g. Rhodes,* 705 F.2d at 163 ("Section 522(b)(1) encompasses no facial restrictions upon the states' authority to opt-out."). *But see Sullivan,* 680 F.2d at 1137 (states have the power to establish exemptions for debtors so long as they do not conflict with the federal bankruptcy laws.) We now know, however, that this is not the case. "We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains." *Owen,* 500 U.S. at 313, 111 S.Ct. at 1838. Consequently, "the state's ability to define its exemptions ... must yield to [the] conflicting policies in the Bankruptcy Code." *In re*

*Weinstein,* 164 F.3d 677, 683 (1st Cir. 1999).[5]

 Once we accept the reality that there are limits upon the states' ability to define exemptions, the validity of I.C. 34–2–28–1(a)(5) simply becomes a search for just what those limits may be. The court believes that they can be identified by remembering two fundamental principles. First, states may not pass laws to interfere with or complement the nation's bankruptcy laws. *Pinkus,* 278 U.S. at 265, 49 S.Ct. at 110. Second, state laws that alter the balance Congress has struck between the relative rights of debtors and creditors in bankruptcy proceedings interfere with the nation's bankruptcy laws, frustrate their full effectiveness, and are therefore improper. *See* pp. 32–33. These principles lead to the conclusion that the states may not create exemptions that apply *only* in bankruptcy proceedings. Doing so changes the distribution of assets between debtors and creditors and, thus, frustrates the full effectiveness of federal law by changing the balance between debtors and creditors that Congress created in the Bankruptcy Code.

Controlling the distribution of assets between a debtor and its creditors goes to the heart of the bankruptcy process. That process begins with the parties' entitlements as they exist under non-bankruptcy law and then proceeds to adjust them in order to accomplish the objectives of the statute. The law's willingness to recognize state created, non-bankruptcy entitlements in bankruptcy proceedings is very different from allowing states to create bankruptcy entitlements. If a state law tried to increase the distribution to particular creditors, by doubling the amount due in the event of bankruptcy, we would not hesitate to condemn it. A state law that increases the amount due the debtor in the event of bankruptcy, by increasing the exemptions it may claim, should be no different. Recognizing otherwise applicable state exemptions in bankruptcy proceedings is not the same as allowing states to create exemptions just for those proceedings. The first situation simply recognizes non-bankruptcy entitlements. It allows debtors to protect the same property in bankruptcy that they could keep from creditors outside of bankruptcy. The second directly controls the distribution of assets between debtors and creditors and, thus, how the consequences of bankruptcy are allocated between them.

If states have the ability to create exemptions that apply only to bankruptcy proceedings it would give them the ability to change how Congress has allocated the consequences of bankruptcy between debtors and creditors. This would allow states to frustrate the operation of the nation's bankruptcy laws by altering the balance Congress has struck. Theoretically, a state could completely deny bankruptcy debtors any exemptions whatsoever, while leaving the exemptions otherwise available in non-bankruptcy proceedings intact. While this would certainly promote the interests of creditors by maximizing their potential distribution, it would simultaneously undermine the interests of debtors by diminishing the value of the fresh start. At the other extreme, a state could make all of a debtor's assets exempt in bank-

5. It is easier to understand why there are limits upon the states' ability to define exemptions if one first clearly understands precisely what the ability to opt out of the federal bankruptcy exemptions is and, more importantly, what it is not. What Congress actually gave to the states through the opt-out was the power to prevent their residents from taking advantage of the federal bankruptcy exemptions. *See* 11 U.S.C. § 522(b)(1)(the federal bankruptcy exemptions may be claimed "unless the State law ... specifically does not so authorize.") Having been given this ability—the power to forbid—is not the same thing as having been given the power to create. Thus, in giving states the ability to opt out of the federal bankruptcy exemptions Congress did not give them the authority to create bankruptcy exemptions. Instead, what the opt-out represents is a Congressional willingness to recognize the generally available exemptions that states have created for their own purposes in bankruptcy proceedings.

ruptcy. This would promote the interests of bankruptcy debtors by enhancing the value of their post-bankruptcy fresh start, yet, it would also undermine the interests of creditors by diminishing the possibility that they might receive something on account of their claims.

Admittedly, the theoretical scenarios the court has described represent extreme (and probably unlikely) examples of what might be done. Nonetheless, the fundamental principles involved are exactly the same. If it is permissible for the states to meddle with federal law in small ways, they may also do so in more significant ways. States may either interfere with federal law or they may not.

■ If a state statute "stands as an obstacle to the accomplishment and execution of the *full* purposes and objectives of Congress" the Supremacy Clause invalidates it. *Perez*, 402 U.S. at 649, 91 S.Ct. at 1711 (emphasis added, citations and internal quotation marks omitted). Accordingly, the court concludes that the states may not create exemptions that apply only to bankruptcy proceedings. Doing so frustrates the full operation of federal law by changing the balance Congress struck which allocates the consequences of bankruptcy between debtors and creditors. *Accord, In re Reynolds*, 24 B.R. 344, 347 (Bankr.S.D.Ohio 1982) ("When a state endeavors to adopt exemptions applicable only in the bankruptcy court, it then invades an area of law reserved to the federal government, as preempted by the United States Constitution and statutes enacted pursuant thereto.").

The Ninth Circuit Court of Appeals came to a similar conclusion in *In re Kanter*, 505 F.2d 228 (9th Cir.1974). There the court considered the validity of a California statute which prevented a bankruptcy trustee from administering the debtor's interest in a personal injury action even though the debtor's judgment creditors could obtain an interest in it outside of bankruptcy. The court readily concluded that this violated the Supremacy Clause

because it "operate[d] to deny the trustee assets which could ordinarily be reached in satisfying the claims of general creditors." *Id.* at 231. While acknowledging that California had the right to enact exemption laws, the court concluded that this right was not without limits. "[I]n recognizing state exemptions Congress did not provide the states with a free hand to circumscribe the powers of the bankruptcy trustee. It merely sought to recognize the limitations imposed by state law on the ability of creditors to reach the assets of debtors." *Id.* at 230. Consequently, although California had the right to exempt property from the claims of creditors, it could not create exemptions which operated only in bankruptcy proceedings.

■ The Bankruptcy Court for the Northern District of Ohio came to the opposite conclusion when it considered the validity of exemptions that applied only in bankruptcy proceedings. *See In re Vasko*, 6 B.R. 317 (Bankr.N.D.Ohio 1980). *But see In re Reynolds*, 24 B.R. 344 (Bankr. S.D.Ohio 1982). Although upholding the validity of Ohio's bankruptcy only exemptions, the *Vasko* court's analysis is faulty. It concluded that the exemptions did "not interfere with, impede, or conflict with the Congressional policy of giving debtors a fresh start" and distinguished *Kanter* because "the purposes and objectives" of the state statutes in issue were different. *Vasko*, 6 B.R. at 322. By considering the "purposes and objectives" of the state laws in question, *Vasko* improperly applied *Perez*. *Perez* considers only the effect of state law upon the operation of federal law. A state law that frustrates the operation of federal law is not saved because "the state legislature ... had some purpose in mind other than one of frustration." *Perez*, 402 U.S. at 651–52, 91 S.Ct. at 1712. Furthermore, *Vasko* failed to fully appreciate that bankruptcy has a purpose beyond giving debtors a fresh start—it also seeks to pay creditors. Consequently, by focusing exclusively on the impact the exemptions had on the debtor's fresh start, the court ne-

36

glected to consider whether they frustrated the "*full* effectiveness of federal law," *Perez*, 402 U.S. at 652, 91 S.Ct. at 1712 (emphasis added), because it failed to consider whether they undermined bankruptcy's competing purpose of paying creditors. These weaknesses persuade the court that *Vasko* has little persuasive value. This is especially so in light of the subsequent evolution in the law which recognizes that the states' ability to enact exemptions is limited by the competing policies of the Bankruptcy Code. *See Owen*, 500 U.S. at 313, 111 S.Ct. at 1838; *Weinstein*, 164 F.3d 677.

■ Indiana can create any exemptions it wants or no exemptions whatsoever. What it may not do, however, is create (or deny) exemptions solely because of bankruptcy. That is what I.C. 34–2–28–1(a)(5) does. It creates an exemption that is only available in the event a debtor files bankruptcy. This denies the trustee property which, outside of bankruptcy, could be reached to satisfy the claims of creditors. By preventing the bankruptcy trustee from administering property which the state is willing to allow creditors to reach outside of bankruptcy, Indiana has violated the Supremacy Clause and the exemption is invalid. *Accord, Kanter*, 505 F.2d 228; *Reynolds*, 24 B.R. 344.

Indiana Code 34–2–28–1(a)(5) does more than just alter the balance that Congress has struck between debtors and creditors in bankruptcy. It also defeats the statutory framework Congress created for dealing with property held as tenants by the entireties where only one of the two spouses files bankruptcy.

■ One of things that Congress consciously sought to do when it enacted the current Bankruptcy Code was to change the way entireties property was treated when only one of the two spouses filed bankruptcy. *Hunter*, 122 B.R. at 356. Under the Bankruptcy Act of 1898, property held as tenants by the entireties did not become part of the bankruptcy estate

where only one of the two spouses filed for relief. Nonetheless, the debtor's liabilities to creditors, including joint creditors, could be discharged. This had the effect of allowing the debtor to eliminate the joint liability of both spouses without exposing entireties property to the satisfaction of joint creditors' claims. *Hunter*, 970 F.2d at 302. *See also Hunter*, 122 B.R. at 353. Under the current Bankruptcy Code, property held as tenants by the entireties becomes property of the bankruptcy estate and can be administered for the benefit of creditors if the requirements of § 363(h) are met. *Hunter*, 970 F.2d at 303, 305. Yet, while Congress gave trustees the opportunity to administer entireties property, it did not subject that property to liquidation if creditors could not reach it outside of bankruptcy. *Hunter*, 970 F.2d at 307. Through § 522(b)(2)(B), federal law allows a debtor to claim an exemption in

> any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law. 11 U.S.C. § 522(b)(2)(B).

Consequently, to the extent creditors cannot reach entireties property outside of bankruptcy, Congress continued that protection. Nonetheless, where creditors can reach entireties property, the bankruptcy trustee may do so as well. *See Hunter*, 122 B.R. at 356–57.

■ The ultimate result of the statutory framework Congress created was to make entireties property just as available (or unavailable) for the satisfaction of creditors' claims in bankruptcy as it would have been outside of bankruptcy. Indiana Code 34–2–28–1(a)(5) destroys that framework. "By allowing the debtor to completely exempt his interest in entirety property from the bankruptcy estate, Indiana has not preserved the amenability of that property to creditors but shielded it

from all creditors, including joint creditors." *Hunter*, 970 F.2d at 308. *See also Hunter* 122 B.R. at 358 ("entireties real estate has become completely exempt from administration by a bankruptcy trustee, without regard to the presence or absence of joint creditors in an individual case.").

The impact of the statute in this case is demonstrated by a comparison of the distribution that would be available to creditors as a result of the entireties property with and without I.C. 34–2–28–1(a)(5). The property in question has a scheduled value of $60,000 and is encumbered by liens securing $27,300, giving the debtor and his spouse equity of $32,700. Subtracted from this equity would be each spouses' $7,500 exemption for residential real estate, *see* I.C. 34–2–28–1(a)(1), with the result that $17,700 would be available for joint creditors. The debtor and his non-debtor spouse have joint creditors who are owed $21,200. Outside of bankruptcy, these joint creditors would have been able to look to this $17,700 for payment of their claims. Their presence would have allowed the trustee to do so as well, subject to the requirements of § 363(h). The effect of I.C. 34–2–28–1(a)(5), however, is to completely exempt the entireties property from administration by the bankruptcy trustee, even though it would have been amenable to process, on behalf of joint creditors, outside of bankruptcy.

Debtor relies upon the decision in *Meyer v. Hammes*, 187 B.R. 281 (S.D.Ind.1995) where the District Court for the Southern District of Indiana rejected the argument that I.C. 34–2–28–1(a)(5) violated the Supremacy Clause. The argument that court confronted, however, was very different from the one presented here. There, it seems to have been the debtor's contention that Indiana could "not create an exemption for entireties estates but then withhold the exemption where a husband's and wife's individual petitions have been subsequently consolidated." *Meyer* 187 B.R. at 284. The court rejected this argument relying upon *In re Sullivan*, 680 F.2d 1131 (7th Cir.1982) where the Seventh Circuit held that state exemptions which were less generous than the federal bankruptcy counterparts did not conflict with the provisions of the Bankruptcy Code. Here, the trustee's challenge is premised upon the argument that states cannot create exemptions which apply only in bankruptcy. This argument is very different from those presented to either the district court in *Meyer* or to the Seventh Circuit in *Sullivan*. Furthermore, *Sullivan* specifically recognized that states could establish exemptions for bankruptcy debtors "so long as the state law does not conflict with the federal bankruptcy laws." *Sullivan* at 1137. Here we have such a conflict, not only because the exemption in question is available only in the event of bankruptcy but also because it overrides Congress's decision as to how entireties property should be administered when only one spouse files bankruptcy.

### Conclusion

Indiana Code 34–2–28–1(a)(5) is rendered invalid by the Supremacy Clause. The trustee's objection to the debtor's claimed exemption for entireties property is sustained and the claimed exemption will be denied.[6] An order doing so will be entered.

---

**6.** Although the court is denying the debtor's claimed exemption for entireties property, he would still have the opportunity to amend Schedule C, *see* Fed. R. Bankr.P. Rule 1009(a), to claim the exemption provided by § 522(b)(2)(B) and the generally available exemption of $7,500 for residential property.